**Bertram ZWEIBON et al., Plaintiffs,**

v.

**John N. MITCHELL et al., Defendants.**

**Civ. A. No. 2025–71.**

United States District Court,
District of Columbia,
Civil Division.

Feb. 9, 1978.

---

Nathan Lewin, Washington, D. C., for plaintiffs.

Earl Kaplan, Edward S. Christenbury, Kevin T. Maroney, Benjamin C. Flannagan, IV, R. John Seibert, Larry L. Gregg, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This action is before the Court upon defendants' renewed motion for summary judgment. To facilitate an appreciation of the issues currently before this Court, we believe it appropriate to present the background of this litigation.

### A. History of this Action.

This civil damage action constitutes a challenge to warrantless electronic surveillance of the offices of the Jewish Defense League (JDL) conducted by personnel of the Federal Bureau of Investigation[1] in October 1970 and from January 5 through July 3, 1971, as authorized by then-Attorney General John N. Mitchell. Mr. Mitchell authorized the surveillances during a period of JDL harassment of personnel of the Soviet Union located in New York City, ostensibly in an effort to protect the ability of the President to conduct and maintain peaceful relations between the United States and the Soviet Union. Plaintiffs argue that the warrantless surveillances vi-

---

1. Plaintiffs have not opposed the dismissal as to these individuals, nine in number, originally named in the complaint.

olated their statutory rights under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (hereinafter Title III) and under 42 U.S.C. §§ 1983 and 1985, and their constitutional rights under the Fourth Amendment.

This Court on July 20, 1973 dismissed the action, entering summary judgment for defendants and denying plaintiffs' cross-motion for partial summary judgment on the issue of liability. 363 F.Supp. 936 (D.D.C. 1973). We determined that the surveillance was conducted pursuant to the President's national security powers and therefore was not cognizable under Title III or under the Fourth Amendment. 363 F.Supp. at 942–44. Our holding was reversed by the United States Court of Appeals for the District of Columbia Circuit en banc, a majority concluding that the Fourth Amendment required a warrant and a plurality determining that Title III also mandated the issuance of a warrant in the circumstances presented in the subject case. Zweibon v. Mitchell, 170 U.S.App.D.C. 1, 516 F.2d 594 (1975) (en banc), cert. denied, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). In its remand of the case to this Court, the Court of Appeals directed our attention to defendants' interposition of three affirmative defenses to an assessment of liability: (1) whether the Court's determination that the wiretaps were illegally instituted should be applied to establish liability for activity antedating the Supreme Court's decision in United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (hereinafter Keith), if the determination in this case were based upon the Keith decision; (2) whether the doctrine of official immunity insulated these defendants from liability for these actions performed in their official capacities; and (3) whether damage relief should be denied because defendants acted in the good faith belief that their actions were lawful. 170 U.S.App.D.C. at 13, 516 F.2d at 607, n. 18.

Defendants have not advanced the second defense in their renewed motion for summary judgment, preferring to reserve this issue until the Supreme Court rules on the question of official immunity in a constitutional tort context in Butz v. Economou, 535 F.2d 688 (2d Cir. 1976), cert. granted, 429 U.S. 1089, 97 S.Ct. 1097, 51 L.Ed.2d 534 (1977). See Memorandum of Points and Authorities in Support of Defendants' Renewed Cross-Motion for Summary Judgment, at 27, n. 18. We therefore decline to consider and evaluate the immunity defense at this time.

The third defense, that of good faith, is likewise not reached by the Court at this time.[2]

B. *Analysis.*

We therefore direct our attention to the issue of retroactive application of the Keith decision, framed by our Court of Appeals as follows:

"If the illegality of these wiretaps is based upon the Supreme Court's decision in Keith, . . . there are strong factors which dictate that that decision should not be applied retroactively in this damage suit, which is based upon surveillance which occurred before the date of that decision."

170 U.S.App.D.C. at 13, 516 F.2d at 607, n. 18.

As a preliminary and necessary inquiry to our analysis of the retroactivity question, we note that the en banc Court of Appeals has found that "this case does indeed involve the foreign affairs of this country and therefore falls outside the holding in Keith and into the area it reserved for future disposition." 170 U.S.App.D.C. at 58, 516 F.2d at 652. Although the Court recognized that Zweibon presented an issue which the Keith decision had reserved for future disposition, it relied upon the Keith rationale to conclude that a warrant should have been secured before these electronic surveillances were instituted. Zweibon v.

---

2. The factual issues relating to the good faith defense are subject to a jury trial pursuant to the recent suggestion of our Court of Appeals.

In re Bertram Zweibon, 565 F.2d 742 (D.C.Cir. 1977).

*Mitchell, supra,* 170 U.S.App.D.C. at 58–59, 516 F.2d at 652–53.

▪ (1) *Constitutional cause of action.* We therefore turn our attention to the criteria summarized and endorsed by the Supreme Court in *Chevron Oil v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), for determining whether the ruling of the Court of Appeals should be applied prospectively only or whether liability should be assessed in this action. The Court presented the following guidelines:

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application, for 'where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' " [citations and quotations omitted].

We have concluded that application of these criteria compels a determination that this decision should be applied prospectively only and that civil damage liability for the illegal electronic surveillance should not be assessed in this action. We analyze the *Chevron* criteria consecutively.

(a) New principle of law. First, we believe that the *Zweibon* decision established a new principle of law. The necessity of securing a warrant prior to the institution of electronic surveillance of domestic organizations in situations where the national security is involved had not been judicially determined prior to its presentation in this litigation.[3] In *Katz v. United States,* 389 U.S. 347, 358, n. 23, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), while holding for the first time that the warrant requirement of the Fourth Amendment was applicable to electronic surveillances, specifically reserved the question of the applicability of the warrant requirements to national security surveillances. Undeniably, at the time these wiretaps were installed in 1970 and 1971, the question of their legality had not (and still has not) been adjudicated by the Supreme Court. Not until 1972 did the Supreme Court, in a matter of first impression, determine that the warrant requirements of the Fourth Amendment were applicable to domestic security surveillances. *Keith, supra,* 407 U.S. at 299, 92 S.Ct. 2125. Finally, in 1975, this case presented for the first time the question of the applicability of the warrant requirements for domestic national security surveillances. This is the first case to draw a distinction between the types of foreign security surveillances.

Furthermore, we conclude that the Court of Appeals' resolution of this controversy was not "clearly foreshadowed" at the time these surveillances were instituted over seven years ago. In fact, caselaw and historical precedent at that time indicated that a contrary resolution would be forthcoming from any court reviewing warrantless wiretaps in the national security—and particu-

---

**3.** Throughout this opinion we will refer to security surveillances pursuant to the following categorization: surveillances of domestic organizations impacting on purely domestic activities as "domestic security" surveillances; surveillances of domestic organizations which are independent of foreign influence but impact on the conduct of foreign affairs (the present factual situation) as "domestic national security" surveillances; and to surveillances of foreign organizations as "foreign national security" surveillances. "Foreign security" surveil-

lances shall encompass the latter two categories. The Court of Appeals in treating this case as "foreign security surveillance" (170 U.S. App.D.C. at 19, 516 F.2d at 613, n. 42) has determined that a warrant must be obtained before a domestic national security wiretap is installed. *Zweibon v. Mitchell, supra,* 170 U.S. App.D.C. 20, 516 F.2d 614. We employ this terminology merely to facilitate discussion of the law as it has evolved through recent judicial decisions.

larly the foreign security—context. District courts had consistently held that a warrant was not required in such circumstances. *See United States v. O'Neal*, Cr. No. KC CR 1204 (D.Kan., Dec. 1, 1970); *United States v. Dellinger*, No. 69 CR 180 (N.D.Ill., Feb. 20, 1970). *See also United States v. Smith*, 321 F.Supp. 424, 429 (C.D. Cal.1971) (applicability of warrant requirement to foreign national security surveillances reserved, although warrant mandated for domestic security surveillances). In addition, warrantless national security electronic surveillances had been consistently conducted for more than 25 years by Attorneys General without judicial or Congressional intrusion. *See Keith, supra*, at 299. It is in recognition of these considerations that we reach our determination that the facts of this case satisfy the first part of the *Chevron* test.[4]

(b) Purpose and effect of the rule. For our analysis of the remaining two factors of the *Chevron* retroactivity test, we rely heavily upon the well reasoned memorandum of Judge Gasch in *Sinclair v. Kleindienst*, No. 610–73 at 6 (D.D.C. Sept. 23, 1977), analyzing the question of retroactive application of *Zweibon* in the context of domestic security surveillances. We believe that the purposes of the Fourth Amendment will not be advanced by a retroactive application of the Court of Appeals' determination that a warrantless domestic national security electronic surveillance is unconstitutional. The effect of the Court's determination of unconstitutionality will be the protection of an individual's interest in privacy against warrantless domestic national security electronic surveillances. No amount of monetary damages can restore the privacy which was improperly invaded by the action of defendants in the subject conduct. Furthermore, plaintiffs have achieved the result envisioned by the

Fourth Amendment: the Department of Justice's electronic surveillance policy was revised following the Supreme Court decision in *Keith* and accommodated the directive of the *Zweibon* decision. *See* Statement of Attorney General Edward H. Levi, July 9, 1975 (Exhibit 8, Appendix to Defendants' Renewed Motion for Summary Judgment).

We are further persuaded by Judge Gasch's assessment in *Sinclair* that retroactive application of an illegality determination in criminal cases via the exclusionary rule might be appropriate in a given situation while a retroactive creation of a civil damage cause of action for the same privacy intrusion might be inappropriate. *Sinclair v. Kleindienst, supra*, at 6–7. *See Marks v. United States*, 430 U.S. 188, 196–97, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); *Morales v. Hamilton*, 391 F.Supp. 85 (D.Ariz.1975). Precluding usage of illegally secured evidence pursuant to the exclusionary rule in the very case in which the evidence has been deemed to be illegally procured constitutes a substantial and persuasive deterrent of government activity which is questionably illegal. We believe that the policies supporting the doctrines of official and sovereign immunity would be offended by retroactive creation of a civil damage cause of action which would subject public officials to personal liability for reasonable but erroneous interpretations in unsettled areas of constitutional law. *See Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (L. Hand, J.). In addition, the retroactive establishment of a cause of action to create liability for prior conduct under the facts of this case might very well violate defendants' constitutional rights under the Fifth Amendment and, in the matter of the statutory cause of action, could raise important problems implicit in the

---

**4.** This conclusion is strongly supported by the determination by Judge Gasch that the illegality of warrantless domestic security wiretaps was not "clearly foreshadowed" prior to *Keith. Sinclair v. Kleindienst*, No. 610–73 at 6 (D.D.C. Sept. 23, 1977). We believe that our controversy presents an even more compelling case for nonretroactivity than *Sinclair* since a domestic *national* security wiretap involves, to however limited a degree, the President's ability to conduct foreign relations, which is an essential ingredient to any exemption from the warrant requirement that potentially may emanate from our Court of Appeals. *See Zweibon v. Mitchell, supra*, 170 U.S.App.D.C. at 20, 516 F.2d at 614.

constitutional prohibition against *ex post facto* legislation. *U.S.Const.* Art. I, § 9, Cl. 3. *See Morales v. Hamilton, supra,* at 88.

■ (c) Equitable concerns. The third factor in the *Chevron* analysis is similarly satisfied here. We believe that the creation of personal liability for conduct consistent with the then prevailing statutory or constitutional norms and with long standing historical precedent is precisely the form of injustice or hardship which a holding of nonretroactivity could, and indeed should be implemented to, avoid. We reach this determination fully cognizant of, but unpersuaded by, plaintiffs' assertions that a nonretroactive application will frustrate honest and well-motivated litigation to redress constitutional wrongs. We have balanced the equitable interests presented and feel confident that the results of such balancing support our determination. This is not to be interpreted as a minimization of the privacy interest admittedly violated by the illegal actions of these defendants; the significance of the right invaded is not determinative in a retroactivity analysis. *See Cipriano v. City of Houma,* 395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (determination of statute's unconstitutional deprivation of right to vote applied prospectively only).

We therefore find that, "insofar as the rules of law established in *Keith* and *Zweibon* are to serve as the basis for civil liability, they should be limited to prospective application only." *Sinclair v. Kleindienst, supra,* at 7.

■ (2) *Statutory causes of action.* The foregoing analysis of the retroactivity question in the constitutional context similarly is dispositive of plaintiffs' claim for relief under Title III. Any alleged illegality of the electronic surveillances of 1970 and 1971 involved in this action under Title III must be founded upon the subsequent Supreme Court determination in 1972 in *Keith,* and upon the Court of Appeals' determination in 1975 in *Zweibon* that the warrant requirement of the Fourth Amendment was applicable to domestic national security surveillances.[5] *See Zweibon v. Mitchell, supra,* 170 U.S.App.D.C. at 77–78, 516 F.2d at 671–72 & n. 276 (applicability of Title III dependent upon future constitutional law determinations). We therefore hold that plaintiff may not achieve the benefit of the statutory relief provisions of Title III.

We believe that a similar disposition of the claim as advanced under 42 U.S.C. §§ 1983 and 1985 is appropriate.

### C. *Conclusion.*

For these reasons, we hold that plaintiffs are not entitled to the relief sought and that defendants' renewed motion for summary judgment should be granted. In view of our determination, it is not necessary to reach the separate affirmative defenses of good faith and official immunity.

An Order consistent with the foregoing has been entered this day.

---

5. This disposition makes it unnecessary to determine the precedential significance of the plurality opinion of the *en banc* Court of Appeals that Title III applies to all electronic surveillances for which a search warrant is constitutionally required. Absent this expression by a plurality of the Court, we would adhere to our original conclusion of law that Congress, by Title III, did not attempt to legislate with respect to the national security powers of the President. 363 F.Supp. 942. *See* 18 U.S.C. § 2511(3) ("Nothing contained in this chapter . . . shall limit the constitutional power of the President to take such measures as he deems necessary to protect [the national security]"); this conclusion is not without support. *Zweibon v. Mitchell, supra,* 170 U.S.App.D.C. at 98–99, 111, 516 F.2d at 692–93, 706 (opinions of Judge Wilkey and Judge MacKinnon, respectively); *United States v. Smith, supra,* at 425.