RAYMOND J. STEVENS V. NORFOLK AND WESTERN RAILWAY COMPANY.

[No. 2-775A166. Filed November 24, 1976. Rehearing denied January 19, 1977. Transfer denied May 11, 1977.]

*Michael J. Stapleton, Ball, Eggleston, Bumbleburg and McBride*, of Lafayette, for appellant.

*Russell H. Hart, James V. McGlone, John H. Carlson, Stuart, Branigin, Ricks & Schilling*, of Lafayette, for appellee.

## STATEMENT OF THE CASE:

LOWDERMILK, J.—The instant case was transferred from the Second District to this office in order to lessen the disparity in caseloads among the Districts.

Plaintiff-appellant, Raymond J. Stevens (Stevens), brought suit against defendant-appellee, Norfolk & Western Railway Company (N&W) claiming, *inter-alia*, that they were negligent in failing to provide adequate warning devices at a railroad crossing where Stevens' vehicle collided with N&W's train. Following a verdict in favor of N&W, Stevens perfected this appeal.

We reverse.

## FACTS:

The facts necessary for our disposition of this appeal are as follows: On January 14, 1973, Stevens' automobile struck the side of N&W's westbound switch engine as he was driving north on County Road 250 East in Lafayette, Indiana. The railroad crossing where the collision occurred was not provided with any special warning devices (watchman, lights or bells) other than the crossbuck sign prescribed by statute. On November 26, 1974, the trial court sustained N&W's motion for partial summary judgment finding in pertinent part as follows:

"The Court finds, and the parties have so stipulated during argument of counsel, that the railroad crossing in question has not been designated by the Public Service Commission as a dangerous or extra hazardous crossing, and that as a matter of law the defendant was not required to install any automatic train-activated warning signal or crossing safety devices other than those prescribed by statute. It is ordered, adjudged and decreed that the railroad crossing in question was not dangerous or extra hazardous at the time of the incident out of which plaintiff's complaint arose, as that term is defined by the Public Service Commission of Indiana, and therefore, the defendant was not required to install any automatic train-activated warning signals or crossing safety devices other than those prescribed by statute."

## ISSUE:

1. Did the trial court err in finding as a matter of law that a railroad crossing cannot be extra hazardous, hence, a railroad is under no duty to equip the railroad crossings with warning devices other than those required by statute, unless the Public Service Commission of Indiana so specifies?

## DISCUSSION AND DECISION:

IC 1971, 8-6-7-1 (Burns Code Ed.) provides as follows:

"Extra-hazardous grade crossings.—The public service commission of Indiana shall have the exclusive power and it shall be its duty, upon proper petition by any five [5] or more citizens of this state or the board of county commissioners of any county of this state to conduct a hearing to declare as dangerous or extra hazardous any grade crossing in this state which said commission shall find to be of such a character as that the safety of the users of such highway requires the installation of automatic train-activated warning signals or other crossing safety devices.

Such petition, hearing and all proceedings thereon shall be had in conformity with the law governing petitions, hearings and proceedings before said commission in regard to rates and service of public utilities."

N&W argue that the statute cited above vests exclusive power in the Public Service Commission of Indiana to deter-

mine when a railroad crossing is extra hazardous and warrants additional warning devices other than those required for railroads pursuant to statute.[1] Therefore, N&W continues by arguing that the trial court did not err in removing from the jury the possibility of finding it negligent solely because of its failure to equip the railroad crossing with warning devices not required by statute regardless of how they were operating their train prior to the collision with Stevens. In addition to IC 1971, 8-6-7-1, *supra*, N&W cite as principal authorities for their position the cases of *Terre Haute I. & E. Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N.E. 740 and *Tyler* v. *Chicago & Eastern Illinois Railway* (1961), 241 Ind. 463, 173 N.E.2d 314. As N&W properly contend these cases can be cited for the proposition that it is not within the province of the jury to determine when a grade crossing becomes extra hazardous and requires additional warning devices other than those mandated by statute to adequately protect the public using our highways. We are of the opinion that such is not the law in Indiana today.

In *Central Indiana Railway Company* v. *Anderson Banking Company* (1969), 252 Ind. 270, 247 N.E.2d 208, our Supreme Court had an opportunity to implicitly sanction their prior holdings in *Terre Haute I. & E. Traction Co.* v. *Phillips* and *Tyler* v. *Chicago & Eastern Illinois Railway, supra,* by denying appellant's petition for rehearing following the denial of his petition to transfer of *Central Indiana Railway Company* v. *Anderson Banking Company* (1968), 143 Ind. App. 396, 240 N.E.2d 840 without opinion. Rather, the Supreme Court speaking through Justice Arterburn saw fit to take the opportunity to announce a departure from existing Indiana law. The departure was announced at pp. 210-211 as follows:

"The majority rule is given in 24 A.L.R.2d 1169, 1170:
'The doctrine prevailing in most jurisdictions, as the

1. IC 1971, 8-6-2-1 to 8-6-2-9 (Burns Code Ed.) (uniform danger signs). IC 1971, 8-6-6-1 to 8-6-6-2 (Burns Code Ed.) (highway crossing signs).

later cases show, is that where there is evidence that the particular crossing, either because of its more or less permanent features or because of circumstances existing and affecting its use at the given time, was more than ordinarily hazardous, a question for the jury or the trier of facts is usually presented as to whether or not reasonable care on the part of the railroad required it to provide a flagman to warn of approaching trains.

'On the other hand, in the absence of evidence of more than ordinary hazard attending public use of the crossing, there is, according to the doctrine generally laid down, no basis for the contention that the railroad company was under any duty to provide a flagman.'

Indiana has within the last few years showed a tendency to move away from the strict adherence to the minority view and toward the modern view. In *Budkiewicz* v. *Elgin, Joliet, and Eastern Ry. Co.* (1958), 238 Ind. 535, 150 N.E.2d 897, this Court stated the general rule that a driver of a car is not bound under an absolute rule to see every object of danger in or on the highway and could therefore recover from the railroad for damages incurred when a vehicle driven by him collided with a 'cut of cars' standing on the railroad where it intersected the public highway. The concurring opinion construed the decision as placing railroads under the same duty to use due care as it placed upon motorists using the highways. The reasons given for imposing the same duty on both were:

'The method (and speed) of travel on the highways has changed considerably over the last fifty years. The acts which are required to exercise due care by railroads, as well as by travelers on the highway, have changed as travel has changed from the horsedrawn vehicles on gravel roads to the faster-moving motor car on smooth paved roads. Likewise the method and means of signaling and warning of danger has improved during the years by the perfection of various automotive devices, lights, flares, reflectors and luminous paints to the extent that such uses are now reasonable, where previously they were not practical.

'In this age, regardless of any statute, it would be negligence at common law for anyone to leave a large, yet indistinguishable object on the traveled portion of a highway on a dark night (be it a motor vehicle or a railroad car), without warning other travelers of the deceptive condition. Whether or not such a condition existed as a result of an emergency and the injury oc-

curred before the danger could be eliminated, is a matter of defense.'

*Budkiewicz* v. *Elgin, Joliet and Eastern Ry. Co., supra,* at 545, 546, 150 N.E.2d at 907.

The next departure from strict adherence to the so-called 'minority rule' was in the concurring-dissenting opinion to the case of *Tyler, etc.* v. *Chicago & Eastern Ill. Ry.* (1960), 241 Ind. 463, 490, 173 N.E.2d 314, 326:

'Negligence is based upon the duty to use care and it consists of failure to exercise that degree of care which a person of ordinary prudence would exercise under like circumstances. It is to be measured in the light of modern ways and means of life where danger can be reasonably anticipated and likewise reasonably avoided.'

This departure was further amplified by the language on page 493, 173 N.E.2d on page 328:

'To say that a railroad can be held to be negligent for the dangerous condition of its highway crossing only in the event it violates a statute or order of the Public Service Commission is, in effect, exempting it from the common law rules of negligence that are applicable to all persons, including operators of motor vehicles. It is evident without citation of authorities that although motor vehicles have statutes or regulations which control their operation and a violation of which may be held to be negligence, still there are other acts not covered by statutes or regulations for which an operator of a motor vehicle may be held liable under the common law of negligence. I feel the same principle applies to all persons alike, including railroads.' (Citing authorities).

*In light of the foregoing discussion the better rule to adopt is the 'majority rule' which allows liability to be imposed absent a statutory requirement if the facts of the particular case are such as to give the railroad the duty to warn the traveling public of the extra-hazardous nature of the crossing. The question of the presence of an extra-hazardous crossing could be left to the jury's determination.*" (Our emphasis.) See also, *Indianapolis Union Railway* v. *Walker* (1974), 162 Ind. App. 166, 318 N.E.2d 578 (transfer denied).

Therefore, it appears clear to this court that subsequent to *Central Indiana Railway Company* v. *Anderson Banking Company, supra,* that a railroad can be found negligent not only in the manner in which it operates its trains, but also, once

it is determined under all the circumstances that a grade crossing is extra hazardous, it can then be found negligent in its failure to adequately protect the public from danger by providing warnings and taking safety precautions in addition to those required by statute, and despite the absence of a Public Service Commission determination that the crossing is extra hazardous.

N&W argues that this court should not consider *Central Indiana Railway Company* v. *Anderson Banking Company, supra,* as controlling precedent because the remarks made by Justice Arterburn therein are *dicta,* and IC 1971, 8-6-7-1, *supra,* was not brought to the court's attention for interpretation. Even though the remarks of Justice Arterburn in *Central Indiana Railway Company* v. *Anderson Banking Company, supra,* can properly be characterized as dicta, such characterization does not give to this court a license to ignore the clear import of the language used therein by our Supreme Court in manifesting their interpretation of the law in this area. Further, this court cannot properly assume that our Supreme Court was not made aware of, or did not discover through independent research, existing statutory law at the time it renders a decision.

N&W argues further that the intention of our legislature to exclude juries from making the determination that certain railroad grade crossings are extra hazardous is reinforced when one considers IC 1971, 8-6-7.7-2 (Burns Supp. 1976). This statute provides as follows:

> "Automatic train-activated warning signals.—The public service commission of Indiana, in authorizing the construction of any new grade crossing under the provisions of IC 1971, 8-6-1-7, shall have authority to order the installation of automatic train-activated warning signals at such crossing. The commission shall have further authority to order the installation, replacement, relocation, modernization or improvement of automatic train-activated warning signals at any grade crossing in the state in existence at the time the commission may issue such an order. *The authority of*

*the commission to require the installation of such signals* the commission may issue such an order *The authority of shall be exclusive, and shall supersede such power of any other state or local governmental agency. . . ."* (Our emphasis.)

We are of the opinion that IC 1971, 8-6-7.7-2 does not foster N&W's contention. The *courts* of this State cannot properly be considered as "other state or local governmental agencies" to which IC 1971, 8-6-7.7-2, *supra*, is referring. Rather, we are of the opinion that the statute cited above is properly construed as referring to agencies in the executive branch of government.

Since the trial court granted N&W's motion for partial summary judgment finding that the railroad grade crossing could not be extra hazardous as a matter of law solely because the Public Service Commission had not so found, without any apparent consideration of such factors as population, topography, frequency of travel, et cetera, we hold that N&W failed to meet its burden of proving that there was no genuine issue of material fact on the question of whether the railroad crossing involved herein was extra hazardous.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 357 N.E.2d 1.