**Wilma Jean SMITH, Plaintiff-Appellant,**

v.

**CHESAPEAKE & OHIO RAILWAY CO., Defendant-Appellee.**

No. 84–2323.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1985.

Decided Dec. 4, 1985.

As Amended Dec. 5, 1985.

between an automobile in which Smith was a passenger and one of the Chesapeake's trains. We affirm.

## I

The record reveals that on November 18, 1980, Smith was a passenger in an eastbound car driven by a Robert Chambers when Chambers' car collided with a northbound Chesapeake freight train at the Waterfall Road railroad crossing in Richmond, Indiana. This railroad crossing is cut into a small hill, and traffic traveling eastbound toward the crossing approaches it on a slight downhill grade at a 130 degree angle to the tracks. As a vehicle travels east approaching the crossing, the driver's vision of the tracks south of the crossing is obscured by shrubs and trees along the right side of the road. At trial conflicting evidence was presented concerning at what point a driver approaching the tracks from the west would have a clear view of the tracks south of the crossing. For example, a Richmond police officer testified that when a car is approximately ten feet west of the crossing he can see "maybe fifty feet" down the tracks to the south. Chesapeake, however, offered evidence that at approximately twenty feet from the crossing one can see an approaching train 660 feet down the track.

At the time of the collision, the crossing was equipped with a standard crossbuck sign and silent flashers. The investigating police officer observed that these flashers were operating as he approached the crossing immediately after the accident. Pursuant to Indiana law, train crews are required to sound the train's horn intermittently from a point 1500 feet from the crossing until the train traverses the crossing. At trial, the train engineer testified that he sounded the train's whistle approximately ¼ mile from the crossing and that the train's headlight was on and the train's bell was ringing continuously on approach. A

Thomas R. Ruge, Indianapolis, Ind., for plaintiff-appellant.

Victor L. Frost, II, Frost & Hugon, Indianapolis, Ind., for defendant-appellee.

Before COFFEY and FLAUM, Circuit Judges, and WYATT, Senior District Judge.[*]

COFFEY, Circuit Judge.

The plaintiff, Wilma Jean Smith, appeals a jury verdict finding the defendant, the Chesapeake and Ohio Railway Company ("Chesapeake"), not liable for injuries suffered by Smith as a result of a collision

[*] The Honorable Inzer B. Wyatt, Senior District Judge of the Southern District of New York, is sitting by designation.

crew member testified that immediately prior to the impact he observed the flashers operating as the train approached the crossing.[1] The automatic flashers are electronically activated as the train passes over a contact point in the tracks approximately 1200 feet from the crossing. Chambers testified that he neither observed the warning lights flashing nor heard the train's horn. He testified that he was traveling at approximately 10 miles per hour as he approached the crossing and reduced his speed as he approached the tracks. Just as he reached the edge of the tracks, Smith shouted to him that a train was approaching; however, Chambers did not react quickly enough to prevent the collision.[2] The asphalt road on the day of the accident was wet, as there had been a snowfall the night before. Earlier on the day of the accident, Chambers changed a flat right front tire with a spare "bald" tire.[3] Two days later, while discussing the accident with the Richmond police, Chambers admitted that he "slid" into the crossing.[4]

At the close of evidence, the jury was instructed that under Indiana law a railroad has a duty to determine if a crossing is extra hazardous and to provide reasonable and adequate warning to alert motorists of an approaching train. The court also submitted several jury instructions quoted from Indiana statutes and a jury instruction on contributory negligence. Smith complains that the evidence submitted at trial did not justify a contributory negligence jury instruction, and that jury instructions quoting Indiana statutory law were erroneous since they misled the jury as to the duty of the railroad to assess the hazardousness of the railroad crossing. Thus, Smith requests a new trial.

## II

Pursuant to Indiana law, a railroad has a duty to protect the public from extrahazardous railroad crossings and is required to provide adequate warning to highway travelers of approaching trains. The question of whether or not a crossing is extra hazardous and whether the railroad has provided reasonable warning under the circumstances is a question of fact for the jury. *Central Indiana Railway Company v. Anderson Banking Company*, 252 Ind. 270, 274, 247 N.E.2d 208, 211 (1969); *Stevens v. Norfolk and Western Railway Company*, 171 Ind.App. 334, 339, 357 N.E.2d 1, 4 (1976). In this case, the district court's instruction as to the Railroad's duty to determine if the crossing is extra hazardous and to provide reasonable warning was in accord with Indiana law:

### INSTRUCTION No. 15

"The defendant Chesapeake and Ohio Railway Company has a duty to give reasonable and adequate warning to the traveling public of the approach of trains across public highways. Although the track of the railroad is of itself a warning of danger to a person approaching it, the defendant has a duty to exercise reasonable and ordinary care by adopting a reasonably safe and effective mode, commensurate with the danger at a particular crossing, of warning travelers of the approach of trains.

In determining whether the warning devices as they existed on November 18, 1980 provided reasonable and adequate warning to the traveling public of the approach of the train, or whether the particular railroad crossing was extra-hazardous, you may consider the facts, if

---

1. As a train travels north toward the crossing, the railroad track bends to the right, enabling a person on the train to partially see the face of the crossing's crossbuck lights.

2. Smith testified briefly during the trial, but had no recollection of the accident itself.

3. One of the officers who investigated the accident testified at trial that the front right tire of the car was "bald."

4. Chambers' car was a 1968 Chevrolet. Four wheel drive brakes were standard equipment on these cars. *Chilton's Repair & Tuneup Guide Chevrolet 1968 to 1983*, at 201 (1983). Thus, his "slide" into the crossing could be explained, to some degree, by the fact that when he applied brake pressure to the front wheels there was no tread on the right front tire to retard the progress of the car on the wet pavement.

any, concerning the presence or absence of warning signals, gates and bells, together with all other circumstances concerning the crossing, such as obstructions to view, if any, the nature and gradation of the terrain immediately adjacent to the crossing, the angle at which the tracks intersect the highway, the time of day, the speed of the train, the near situation of trees, vegetation and the like, the curves in the track, and the frequency with which travelers pass over the crossing.

If you find from a preponderance of the evidence that the railroad crossing was extrahazardous, then you may consider whether or not the defendant provided reasonable warning on the occasion in question of the approach of the train. If you find that defendant failed to provide reasonable warning under the circumstances, then you may find the defendant negligent for failing to do so."

The district court, however, further instructed the jury:

"INSTRUCTION No. 22A

You are instructed that at the time of the accident in question, the following Statute of the State of Indiana was in effect:

'Local authorities, in their respective jurisdictions, shall place and maintain such traffic control devices upon highways under their jurisdiction ... as they may deem necessary....'

I.C. 1971, 9-4-1-32

\* \* \* \* \* \*

INSTRUCTION No. 22B

You are instructed that at the time of the accident in question, the following statute of the State of Indiana was in effect:

(a) No person shall place, maintain, or display upon or in view of any highway any unauthorized sign, signal, marking, or device which purports to be, is an imitation of or resembles an official traffic control device or railroad sign or signal, or which attempts to direct the movement of traffic....

(f) Every such prohibited sign, signal, or marking is declared to be a public nuisance and the authority having jurisdiction over the highway is empowered to remove the same or cause it to be removed without notice.

I.C. 9-4-1-38

INSTRUCTION No. 22C

You are instructed that at the time of the accident in question, the following Statute of the State of Indiana was in effect:

Extra-hazardous grade crossing.—The public service commission of Indiana shall have the exclusive power and it shall be its duty, upon proper petition by any five (5) or more citizens of this state or the board of county commissioners of any county of this state to conduct a hearing to declare as dangerous or extra hazardous any grade crossing in this state which said commission shall find to be of such a character as that the safety of the users of such highway requires the installation of automatic train-activated warning signals or other crossing safety devices.

I.C. 1971, 8-6-7-1

You are further instructed that at the time of the accident in question, the Public Service Commission of Indiana had not made any order, requirement, or determination that the Waterfall Road grade crossing in Richmond, Indiana was dangerous or extrahazardous or that the character of said crossing required the installation of crossing gates or other crossing safety devices."

These instructions were derived in part from the Indiana Statutes. According to Smith's interpretation, jury instructions 22A, B, and C improperly suggest to the jury that the public authorities and not the railroad are the ones responsible for determining if adequate signals are provided at the crossing and thus the instructions given negated any duty on the part of the railroad to evaluate the danger at the crossing. Pursuant to Fed.R.Civ.P. 61, when assessing the adequacy of jury in-

structions given at trial, we consider not only "the instructions as a whole, but [also] ... the opening statements, the evidence and the closing argument" to determine if the jury was adequately informed of the applicable law. *Alloy International Co. v. Hoover-NSK Bearing Co.*, 635 F.2d 1222, 1226 (7th Cir.1980) *see also Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 595 (7th Cir.1985); *Qasem v. Kozarek*, 716 F.2d 1172, 1180 (7th Cir.1983).[5] With this standard in mind, we turn to the jury instructions given in this case.

█ Specifically, Smith contends that since jury instructions 22A and B state that it would be unlawful for anyone to install additional warning devices without the consent of the public authorities, the jury was misled into believing that the railroad had no duty to assess the danger and provide adequate warning unless required to do so by the local governmental authorities. The clear meaning or import of these jury instructions, however, do not negate the duty of the railroad to assess the danger at the crossing and certainly were not prejudicial. These two instructions when read properly in sequence informed the jury that a railroad, even if it desired to place additional warning signals at the crossing, must initially obtain the permission of the local authorities. This information was clearly brought out at trial through the testimony of both the plaintiff's and defendant's witnesses. For example, the defendant's expert stated that railroads have the responsibility of making an independent evaluation of the dangerousness of the crossing and further the railroad should recommend to the proper governmental authorities that additional warning signals be placed at a crossing if needed. (Tr. 765). In addition,

on two separate occasions during the trial the jury was instructed that whether or not the crossing was extrahazardous would be within the "purview of their own conclusions ... gleaned from all the evidence in the case." (Tr. 778, 501). Thus, we do not agree with Smith's contention that the jury would interpret jury instructions 22A and B as relieving the railroad of its duty to provide additional warning signals if warranted unless required to do so by the local governmental authorities; rather, the jury was instructed throughout the trial that it was to decide whether the crossing was extrahazardous and whether the railroad was negligent in failing to place proper warning signals. Jury instructions 22A and B simply informed the jury that the railroad could not, on its own volition, place additional signals at the crossing without prior approval of the local governmental authorities. Certainly, the jury could have found the Chesapeake negligent if the jury determined the railroad crossing to be extrahazardous and that the Chesapeake had not petitioned the authorities for permission to place additional warning devices at the crossing.

Jury instruction 22C, however, does cause us some concern as a jury could conclude from the language in this instruction that the Public Service Commission of Indiana is the sole judge of whether or not a railroad crossing is extrahazardous. Under Indiana law, it is clear that whether a railroad crossing is extrahazardous and requires additional warning devices is a question of fact for the jury to determine. The railroad argues that this instruction only informs the jury that the Public Service Commission's determination may be a factor in considering whether the crossing

---

5. Fed.R.Civ.P. 61 governs when a mistake at trial is considered to be harmless error and states:

"The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

As we stated in *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 595 (7th Cir.1985), Fed.R.Civ.P. 61 governs our review of the jury instructions given at trial:

"In diversity cases, state law determines the substance of jury instructions, while federal law governs the procedure in formulating the instructions and the manner in which they are given."

*Id.; see also Hallberg v. Brasher*, 679 F.2d 751, 757–58 (8th Cir.1982); 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2883 at 279 (1973).

is extrahazardous. If the instruction had stated that the Public Service Commission's determination was only a factor to consider in determining liability, this instruction would have been a clearer recitation of the Indiana law.[6] *Cf. Stevens v. Norfolk and Western Railway Co.,* 171 Ind.App. 334, 341, 357 N.E.2d 1, 5 (1976). The fact that the citizens of Richmond had not complained about the dangerousness of the railroad crossing to the PSC, and the PSC had not conducted an investigation of this crossing, would be an appropriate factor for the jury to consider when determining if the railroad had notice of the alleged hazardous conditions at the crossing, and if others in the community believed the crossing to be dangerous enough to warrant additional warning signals.

 Unless an erroneous jury instruction affects the substantial rights of the parties, a new trial is not required. *Simman, Inc.,* 762 F.2d at 595; *Alloy International Co.,* 635 F.2d at 1226; *see also Aero International, Inc. v. United States Fire Insurance Co.,* 713 F.2d 1106, 1113 (5th Cir.1983); *Spratt v. Alsup,* 468 N.E.2d 1059, 1063 (Ind.App.1984). As previously stated, we must not only consider "the instructions as a whole, but … the opening statements, the evidence and the closing arguments" to determine if an erroneous instruction affected a party's right to a fair trial to a substantial degree. *Alloy International Co.,* 635 F.2d at 1227; "Reversal is inappropriate unless the jury's understanding of the issues was seriously

affected to the prejudice of the complaining party." *Simman, Inc.,* 762 F.2d at 595. In this case, the fact that instruction 22C failed to inform the jury that the PSC determination, or lack thereof, of the railroad crossing's extrahazardousness could be considered only as a factor in its determination of liability does not warrant a new trial since a review of the record at trial reveals that the jury would not in all probability interpret Instruction 22C as relieving the Chesapeake of its duty to assess whether or not the crossing was extrahazardous. Specifically, after the district court admitted a document from the PSC in evidence, which stated that its records failed to disclose any determination made by the Commission that the Waterfall Road crossing was extrahazardous,[7] the court cautioned the jury that:

> "This jury is going to have the determination about this crossing and about what was required and about the issue of liability, and the court, at the conclusion of this case, will give you an instruction which may refer to extrahazardous, and that determination will be within the purview of your own conclusions and gleaned from all the evidence in the case…."

(Tr. at 778). Thus, the jury was specifically instructed at the time that the PSC certificate was entered in evidence that it would determine the issue of extrahazardousness. Further, final jury instruction 15 explicitly informed the jury that it was their responsibility to determine whether

---

6. The railroad's proposed jury instruction contained language to the effect that the Public Service Commission's determination of the crossing's dangerousness or "extrahazardousness," or lack thereof, was only one factor for the jury to consider in its determination of liability; the district court, however, struck that portion of the jury instruction stating that the PSC's determination should be considered only a factor in determining liability.

7. The district court admitted a document from the Public Service Commission of Indiana that stated the Commission had no memorandums, documents, etc., in its file that it had ever made a determination as to whether or not the crossing was extrahazardous. Smith contends that the district court erred when it admitted this

document since it was essentially an "expert opinion" that the crossing was not extrahazardous, yet it was admitted without the proper foundation. However, a review of the record reveals that this document was not admitted as an "expert opinion," rather it was admitted pursuant to Fed.R.Civ.P. 44(b) which provides "[a] written statement that after diligent search no record or entry of a specified tenor is found to exist in the records … it is admissible as evidence that the records contain no such record or entry." Thus, this document was properly admitted to demonstrate that the Public Service Commission of Indiana had never made a determination in regard to the Waterfall railroad crossing.

the crossing was extrahazardous and whether the railroad had placed an adequate warning at the crossing. In closing argument, defense counsel also emphasized that it was the jury's role to determine if the crossing was extrahazardous. A review of the instructions given during the trial and after closing argument reveal that the jury was clearly instructed that it was their responsibility to determine whether or not the crossing was extrahazardous. Thus, we hold that jury instruction 22C did not affect the substantial right of Smith to receive a fair trial.[8]

### III

Smith next contends that the district court erred in submitting an instruction to the jury on Smith's contributory negligence. The jury instruction stated, in part:

"Contributory negligence is the failure of a plaintiff to use reasonable care to avoid injury to herself, which failure is a proximate cause of the injuries or damages for which recovery is sought.... If you find, after considering all the evidence in this case, that the plaintiff was negligent in any manner which proximately contributed to the plaintiff's damages, then the plaintiff cannot recover from the defendant."

Smith argues that the record fails to contain any evidence from which a jury could conclude that she was contributorily negligent and thus as a matter of law the contributory negligence instruction should not have been submitted to the jury.

Pursuant to Indiana law, a passenger of a vehicle is not required to be constantly on the lookout for approaching vehicles or unexpected danger. *Lindley v. Sink*, 218 Ind. 1, 16, 30 N.E.2d 456, 462 (1940); *Spratt*, 468 N.E.2d at 1063; *Horton v. Sater*, 140 Ind.App. 1, 6, 221 N.E.2d 452, 454 (1966). "Nevertheless, if a passenger using reasonable care should have seen an approaching vehicle enabling her to warn the driver who could have prevented the collision, it would have been her duty to do so." *Spratt*, 468 N.E.2d at 1063 (citing *Kavanagh v. Butorac*, 140 Ind.App. 139, 221 N.E.2d 824 (1960)); *Lindley*, 218 Ind. at 19, 30 N.E.2d at 463. What is reasonable under the circumstances is a question of fact for the jury. *Kaminski v. Meadows*, 264 F.2d 53, 57 (7th Cir.1959) (citing *Lincoln Operating Co. v. Gillis*, 232 Ind. 551, 555–56, 114 N.E.2d 873, 875 (1953)). The evidence is to be viewed in the light most favorable to the proponent of the jury instruction. *Lincoln Operating Co.*, 232 Ind. at 555–56, 114 N.E.2d at 875. If the facts are in dispute, or if reasonable persons may draw different conclusions from the undisputed facts, "a question of negligence is one for the jury...." *Id.*

The evidence reveals that Chambers' car approached the crossing, traveling down an inclined road that was wet and somewhat slippery from the previous night's snowfall. As Chambers' car approached the crossing, the train was approaching from the south with its headlight on, its whistle blowing and its bell ringing. The crossing's warning signals were also operative with flashing red lights warning of the train's approach. Smith argues that she relied on Chambers to take the necessary precautions in approaching the railroad crossing.[9]

---

**8.** Further, the evidence discloses that it was the intervening negligence of Chambers in the operation of his automobile that in all probability caused the accident. The evidence at trial revealed that the warning signals were flashing, and that the train's headlights were on, its whistle was blowing and its bell was ringing as it approached the crossing; Chambers, however, failed to come to a complete stop within at least 10 feet from the crossing as required by Indiana law. IND.CODE § 9-4-1-106 (1971). In fact in his statement to the Richmond police, Chambers stated that he braked only after Smith alerted him to the oncoming train and that thereafter his car "slid" into the railroad cross-

ing. Earlier that day, Chambers had a flat front tire and replaced it with a treadless or "bald" tire.

**9.** Specifically, Smith relies on Chambers' testimony that he was traveling only at 10 m.p.h. and that he further reduced his speed as he approached the crossing. Thus, she contends that she had no duty to give an earlier warning since she believed that Chambers, the driver of the car, was exercising the appropriate care. *See Gergley v. Moore*, 125 Ind.App. 263, 265, 120 N.E.2d 637, 638 (1954).

The evidence, however, reveals that Chambers was not exercising due care as he approached the crossing. An ambulance driver also testified that Chambers told him immediately after the accident that he (Chambers) had seen the warning lights flashing, but believed that he had sufficient time to cross the tracks and avoid the train. Chambers further admitted at trial that he had "slid" into the crossing. Pursuant to Indiana law, a driver of a motor vehicle is to maintain a speed that is "reasonable and prudent under the conditions." Ind.Code 9–4–1–57(a) (1982). Thus, given the road's somewhat hazardous condition at the time of the accident, the jury was certainly free to find that Chambers was not exercising the proper care, management, control and/or lookout when approaching the crossing. Under these circumstances, there certainly was sufficient evidence in the record to submit a jury instruction concerning whether Smith, knowing the contour and conditions of the road and knowing of the train's approach, was contributorily negligent in failing to warn Chambers of the approaching train so that he could take preventative action. *See* *Spratt,* 468 N.E.2d at 1063.

Under Indiana law, negligence is usually a question of fact for the jury to decide. *Lincoln Operating Co.,* 232 Ind. at 555–56, 114 N.E.2d at 875; *Indianapolis Union Ry. v. Walker,* 162 Ind.App. 166, 179, 318 N.E.2d 578, 586 (Ind.App.1974). When viewing the evidence and the inferences to be drawn therefrom in the light most favorable to Chesapeake, we hold that the record contains sufficient evidence to justify the submission of the contributory negligence instruction to the jury.

The decision of the district court is AFFIRMED.