Imogene WILLIAMS, Appellant,

v.

**UNITED STATES ELEVATOR CORPO-RATION and Elcon Enterprises, Inc., Appellees.**

No. 89–7180.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1990.

Decided Dec. 11, 1990.

See also 125 F.R.D. 565.

Benjamin T. Boscolo, for appellant. Barry M. Chasen, Greenbelt, Md., also entered an appearance for appellant.

Eric G. Ertman, Silver Spring, Md., of the bar of the Court of Appeals of Maryland, pro hac vice, by special leave of the Court, with whom Joseph F. Cunningham, Washington, D.C., was on the brief, for Elcon Enterprises. Wade J. Gallagher, Washington, D.C., was on the brief, for appellee U.S. Elevator Corp.

Before EDWARDS, D.H. GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Separate dissenting opinion filed by Circuit Judge EDWARDS.

SENTELLE, Circuit Judge:

This appeal arises from a jury verdict rendered against appellant Imogene Williams ("Williams" or "appellant") in a diversity action brought against appellees United States Elevator Corporation ("USEC") and Elcon Enterprises, Inc. ("Elcon") for physical and emotional damages appellant allegedly suffered as a result of being trapped in a malfunctioning elevator. On appeal, Williams raises issues based exclusively on her assertion that the district court erred in instructing the jury that psychological effects must be the result of physical injury in order to support a recovery of damages for negligent infliction of emotional distress.

Despite an intervening change in the governing law of the District of Columbia abandoning the requirement that emotional distress must be traceable to physical injury in order to be compensable, we affirm the jury's verdict, as any error in the instruction was harmless.

## I. BACKGROUND

Appellant appeals from an adverse verdict in a personal injury action against the elevator manufacturer, USEC, and the maintenance contractor, Elcon.[1] The action alleged that, as a result of an incident occurring on May 13, 1986 at the Department of Labor, appellant suffered past, present, and future medical expenses, lost wages, mental anguish, fright and emotional distress, pain, suffering, and severe personal injuries.

According to appellant's testimony, she arrived at work on the date in question, parked her car on a lower level of an employee parking garage, entered an elevator, and pressed "3" for the third floor. When the elevator arrived at that floor, its doors failed to open. Appellant was unable to open the door by pressing the "door open" button so she attempted to call for help by means of an emergency telephone installed in the elevator. Though unsuccessful in her attempts to reach emergency personnel, she reached her supervisor. The elevator suddenly fell while appellant was talking to her supervisor and came to an abrupt halt at the plaza level of the building. The elevator doors again failed to open and the elevator rose to the fifth floor, stopped, then fell back to the plaza level. According to her testimony, appellant was trapped alone in the elevator for approximately forty minutes while the elevator continued to rise and fall at erratic speeds. She offered evidence of physical injuries and medical treatment. Appellees, by cross-examination and counter-evidence, contested virtually every material element of appellant's factual case.

At the close of all evidence and after hearing defense motions, the district court submitted the case to the jury on theories of strict liability, implied warranty of fitness, and negligence in design against USEC, and on a theory of negligence in maintenance against Elcon. The court submitted to the jury a verdict sheet requesting special verdicts in the form of answers to the following questions:

1. Is United States Elevator Corp. strictly liable for the injuries plaintiff suffered?

2. Did United States Elevator Corp. breach its implied warranty of fitness for a particular purpose with respect to elevator 20?

3. Was United States Elevator Corp. negligent in its design of elevator 20?

4. Is Elcon Enterprises, Inc. negligent in its maintenance of elevator 20?

5. Is Elcon Enterprises, Inc. liable for negligent infliction of emotional distress?

If you find U.S. Elevator Corp. liable for the injuries which plaintiff sustained, what is the amount of damages to which she is entitled?

---

1. A third defendant, GAL Manufacturing Corporation, which provided certain component parts for the elevator, was dismissed from the lawsuit by voluntary consent.

If you find Elcon Enterprises, Inc. liable for the injuries which plaintiff sustained, what is the amount of damages to which she is entitled? [2]

After approximately ninety minutes of deliberations, the jury propounded the following written question to the court: "Do the psychological effects (damages-potential compensation) have to be the result of (related) physical injury? (Question based on Judge's Instructions.)" J.A. at 372–73. Over appellant's objections, the district court responded with the following answer: "I am applying a decision of our court of appeals back in 1966, which said that the question to be found in that case was whether appellant's alleged psychiatric disorders are a proximate result of the physical injuries sustained by her. Does that answer your question?" J.A. at 375–76. The jury, apparently failing to understand the judge's answer, asked the judge to repeat his statement. The judge then stated: "In other words, your question is: Do the psychological effects have to be the result of physical injury, and the answer is: Yes." J.A. at 376. Shortly thereafter, the jury returned a verdict in favor of USEC and Elcon on all counts.

Appellant moved for a new trial, contending that the jury instruction concerning the relationship necessary between psychological effects and physical injury was erroneous. By orders dated June 28 and June 30, 1989, the district court denied the motion and reaffirmed its conclusion that "the District of Columbia ... does not allow recovery for negligently inflicted emotional distress absent a causal relationship between some physical injury and that emotional distress." J.A. at 18.

Appellant bases her present appeal on whether the district court erred in its instruction on recovery for negligently inflicted emotional distress.

---

**2.** Joint Appendix ("J.A.") at 377. We note that our determination of the exact form of the verdict, as well as other factual predicates for this opinion, was hampered by the parties' submission of a two-volume appendix containing neither a table of contents nor an index. As the component parts of the appendix are not ar-

## II. ANALYSIS

### A. *The Instruction Given*

The original instruction on the emotional damage issue consisted of the following:

You are instructed that there can be no recovery for negligently caused emotional distress, mental consequence or disturbance unless it is a result of a physical injury. The accompanying physical injury need not be substantial to support recovery or [sic] negligently caused emotional distress. Any physical injury will be sufficient to support a claim for negligently caused emotional distress.

J.A. at 370. As noted above, the trial court offered additional instructions consistent with the original in response to a jury inquiry.

The parties devoted significant portions of their original briefs to arguing whether a causal relationship between physical injury and psychological distress is required in order to recover for negligent infliction of emotional distress. Appellant urged this Court to reject any such requirement, arguing that numerous cases support the proposition that emotional distress need only be *accompanied* by physical injury in order to recover. *See, e.g., Perry v. Capital Traction Co.,* 32 F.2d 938 (D.C.Cir.), *cert. denied,* 280 U.S. 577, 50 S.Ct. 31, 74 L.Ed. 627 (1929) (requiring only accompanying physical injury for emotional damages recovery); *Waldon v. Covington,* 415 A.2d 1070, 1076 n. 20 (D.C.App.1980) (same).

Appellees, on the other hand, cited a long list of decisions requiring a causal relationship between emotional distress and physical injury in order for the emotional distress to be compensable. *See, e.g., Kropinski v. World Plan Executive Council–U.S.,* 853 F.2d 948, 952–53 (D.C.Cir.1988) (requiring causal relationship between emotional distress and physical injury); *Gilper v. Kiamesha Concord, Inc.,* 302 A.2d 740,

---

ranged in chronological order, and as the first volume contains pages numbered 1–555 and the second pages numbered 379–693, the Court has been forced to review the original record, an expenditure of time and effort which should not have been necessary.

745 (D.C.App.1973) (emotional distress must be traceable to substantial physical injury); *Harrison v. Canada Dry Corp.*, 245 A.2d 642 (D.C.App.1968) (requiring causal relationship).

After briefing in this appeal was completed, the District of Columbia Court of Appeals issued an *en banc* opinion directly addressing the issue of whether emotional damages need to flow from negligently inflicted physical damages in order to be compensable. *Williams v. Baker*, 572 A.2d 1062 (D.C.App.1990). *Williams v. Baker* involved a mother's claim of negligent infliction of emotional distress against a doctor who had incorrectly diagnosed her son's medical condition. The false diagnosis resulted in physical harm to the son, but caused no such harm to the mother. A panel of the District of Columbia Court of Appeals affirmed the trial court's grant of summary judgment in favor of the defendants. 540 A.2d 449 (D.C.App.1988).

The court then granted *en banc* review, and affirmed the panel decision, but did so on a new rationale, abandoning the requirement of a causal relationship between the physical injury and the emotional distress, and holding:

> If the plaintiff was in the zone of physical danger and was caused by *defendant's negligence* to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, *regardless of whether plaintiff experienced a physical impact* as a direct result of defendant's negligence.

572 A.2d at 1067 (emphasis added).

■ As the present case arose under the district court's diversity jurisdiction, 28 U.S.C. § 1332, the law of the District of Columbia governs. "Although the Rules of Decision Act, and hence *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), do not strictly apply with respect to D.C. law, we apply D.C.'s sub-

stantive law analogously for reasons of uniformity and respect for the D.C. Court of Appeals." *Schleier v. Kaiser Foundation Health Plan of Mid–Atlantic States, Inc.*, 876 F.2d 174, 180 (D.C.Cir.1989) (citing *Anchorage–Hynning & Co. v. Moringiello*, 697 F.2d 356, 360–61 (D.C.Cir.1983)). Thus, following the District of Columbia Court of Appeals' *en banc* decision, it is clear that a causal relationship between the emotional distress and physical injury is no longer required in the District of Columbia to recover for negligent infliction of emotional distress. In light of that change in governing law, the district court's instruction requiring a causal relationship between the appellant's physical and emotional injuries is erroneous. Ordinarily, we would make a determination as to the retroactive applicability of *Williams v. Baker*;[3] however, in the present case, we need make no such determination. Regardless of retroactivity, the alleged error in the jury instructions was harmless and does not require us to remand this case for a new trial.

## B. *The Impact of the Error*

■ Once we have found the existence of an error, we must then determine whether that error is of such significance as to require a remand of the case for retrial. This court has indicated that "[t]he standard for determining when an error in a jury instruction requires reversal is the general standard for determining harmless error after objection." *United States v. Lemire*, 720 F.2d 1327, 1339 n. 16 (D.C.Cir. 1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984) (citations omitted). Under Fed.R.Civ.P. 61, an error requires reversal only if we conclude that the faulty jury instruction "affect[ed] the substantial rights of the parties.[4] The Supreme Court has stated that "if one cannot say, with fair assurance, ... that the judgment was not substantially swayed by the

---

3. *See, e.g., Mendes v. Johnson,* 389 A.2d 781 (1978) (discussing factors to be considered in applying decision retroactively).

4. Although Fed.R.Civ.P. 61, by its own terms, applies only to district courts, "it is well settled

that the appellate courts should act in accordance with the salutary policy embodied in Rule 61." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984).

error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). The proper inquiry is "whether the error itself had substantial influence. If so, or if one is left in grave doubt, the [verdict] cannot stand." *Id.* This inquiry "involves an assessment of the likelihood that the error affected the outcome of the case." *Jordan v. Medley*, 711 F.2d 211, 218 (D.C.Cir.1983) (citations omitted).

We are well aware that the circuits are divided on the appropriate standard of review to apply in gauging the effect of an error in a civil case.[5] In the *Jordan* case we noted that the Supreme Court in *Kotteakos*, a criminal case, "acknowledge[d] that although the 'substantial rights' test applies to both civil and criminal cases, that 'does not mean that the same criteria shall always be applied' to those separate categories." *Jordan*, 711 F.2d at 219 n. 6 (quoting *Kotteakos*, 328 U.S. at 762, 66 S.Ct. at 1246–47). In so doing, we noted the language of 28 U.S.C. § 2111 (1976), which requires a court on appeal or on a writ of certiorari to "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." The "substantial rights" language is the same phrase construed by the Supreme Court in *Kotteakos* under section 269 of the Judicial Code (then 28 U.S.C. § 391). The present statute, in common with the statute construed in *Kotteakos*, expresses no distinction between civil and criminal cases. *Cf. Kotteakos*, 328 U.S. at 762, 66 S.Ct. at 1246 ("[t]he statute in terms makes no distinction between civil and criminal causes").

Whatever difference may be appropriate in specific cases with reference to the criteria to be applied under the *Kotteakos* standard, we have in the past applied the *Kotteakos* standard to civil cases and do so today. *See Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 844 (D.C.Cir. 1981), *cert. denied*, 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). Applying that standard to the present case, we conclude there is no way in which the trial court's error could have affected the substantial rights of the parties. Although the subsequent decision in *Williams v. Baker* specifically negated the causal connection between the physical and emotional damages charged by the district court, errors in jury instructions may be ignored "if the erroneous instruction went to an issue that is immaterial in the light of the jury's verdict." *See* 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2885 at 290–91 (1973). In the present appeal, the erroneous jury instruction is irrelevant to the outcome of the case. From our examination of the special verdicts returned by the jury, it is clear that the jury found appellees USEC and Elcon entirely free of any negligence in the design or the maintenance of the elevator. *See* J.A. at 377. To each of the district court's queries regarding the negligence of the appellees in the design or maintenance of the elevator, the jury replied "No." *Id.* In addition, the court asked the jury "[i]s Elcon Enterprises, Incorporated, liable for negligent infliction of emotional distress?" *Id.* To this question the jury also replied "No." *Id.* Under *Williams v. Baker*, recovery may be obtained for negligent infliction of emotional distress and physical injury if the "defendant's negligence" caused a plaintiff in the zone of physical danger to fear for her own life or safety. Obviously, a plaintiff

---

5. *Compare U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1252–53 & n. 39 (10th Cir. 1988) (standard of review for harmless error in civil case "is whether the substantial rights of the parties were more probably than not unaffected by the error"); *Smith v. Chesapeake & Ohio Ry. Co.*, 778 F.2d 384, 389 (7th Cir.1985) (same); *McIlroy v. Dittmer*, 732 F.2d 98, 105 (8th Cir.1984) (same), *and Haddad v. Lockheed California Corp.*, 720 F.2d 1454, 1459 (9th Cir. 1983) (same), *with Aetna Casualty and Sur. Co.*

*v. Gosdin*, 803 F.2d 1153, 1159 (11th Cir.1986) ("in civil cases courts should apply the same standard as announced in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), a criminal case"), *and McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 924–27 (3rd Cir.1985) (standard of review for harmless error same for both criminal and civil cases, i.e., errors "are not harmless unless it is 'highly probable' that they did not affect a party's substantial rights").

must first establish that the defendant was negligent in order to recover for any inflicted emotional distress. This was a burden appellant failed to meet. The erroneous jury charge could not in any way affect the jury's determination of *negligence* on the part of the appellees as it dealt only with the issue of damages. Thus, the charge could not have risen to the level of harmful error.

■ Because the district court carefully employed a verdict form requiring special verdicts on the questions of negligence and damages, it is easy to ascertain that the erroneous damages instruction could not have influenced the negligence verdict. In instructing the jury on the negligence issues, the district judge defined negligence as "the failure to exercise ordinary care" or "doing something a person using ordinary care would not do or not doing something a person using ordinary care would do." J.A. 361. While he expanded on the standards of care and other matters relevant to the instructed definition of negligence, his instructions on the negligence issues do not involve damages matters. The portion of the charge subsequently rendered erroneous by changes in District of Columbia law went only to damages, to matters inquired of by the special verdict issues listed under number "5" on the verdict form. In examining the court's instructions, we "presume[ ] the jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions . . . and strive to understand, make sense of, and *follow* the instructions given." *Francis v. Franklin*, 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985) (emphasis added).[6] This treatment of jury responsiveness to instruction has been described by

the Supreme Court as "the almost invariable assumption of the law." *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987). In the present case, the jurors could not have answered the negligence issues in the negative as they did unless they found no failure of the standard of reasonable care. As they found no such failure, the amount of damages was immaterial. To reverse the district court, we would be forced to assume that the jurors disregarded their instructions and decided the negligence issues in the negative only because they thought no damages were involved. To so hold would be to ignore the approach deemed an "almost invariable assumption" by the highest court—something we are not at liberty to do even if we wished.[7]

Although appellant argues that we should attach sufficient importance to the question asked by the jury to reverse, we cannot agree. The jury's question to the court regarding the necessity of tracing emotional distress to a negligently caused physical injury fails to convince us that the error was harmful. The jury's question to the district court concerned the *causation* requirement in the recovery of emotional damages. Specifically: "Do the psychological effects (damages-potential compensation) have to be the result of (related) physical injury?" J.A. at 375. Although the court's response was incorrect in light of the intervening change in the law, the question did not deal in any way with the finding of negligence, but only went to the issue of damages. Thus, the judge's response could not have misled the jury with respect to its finding of negligence. Because appellant was unable to establish negligence, her action for recovery of negligent infliction of emotional damages can-

6. The language deleted from the above quotation specified the application of the presumption to "a criminal case." Since the presumption is deemed adequate to protect the important rights at stake in criminal cases, we think it follows that it must be adequate in the lesser burdened context of a civil jury trial.

7. To conclude, as our dissenting colleague does, that the jury colloquy with the court refutes "the usual presumption that juries follow their in-

structions," dissent at 1028, requires us not only to ignore this "almost invariable assumption" on the basis of a tenuous interpretation of an ambiguous question, but also to assume that the jury answered the special verdict form falsely. Were we to adopt our colleague's view, the value in the submission of special verdicts would be greatly diminished and our understanding of the esteem to be afforded jury verdicts much compromised.

not survive as a matter of law. *Williams v. Baker*, 572 A.2d at 1067 (requiring negligent conduct on part of defendant for recovery of emotional distress damages). Consequently, the district court's erroneous response to the jury's inquiry is immaterial in light of the jury's specific finding of no negligence on the part of appellees. Thus, we affirm the judgment of the district court.

EDWARDS, Circuit Judge, dissenting:

I dissent because I believe that this case must be remanded for a new trial in light of an intervening change in the law.

At the time when this case was tried, District of Columbia law precluded an award of damages for emotional distress that was not caused by some physical injury. Subsequent to the trial in this case, the District of Columbia Court of Appeals discarded the legal requirement that, to be compensable, emotional harm must be caused by physical injury. During the jury deliberations in this case, the jury specifically asked the trial judge whether the plaintiff was barred from receiving damages for emotional distress if her alleged emotional injury was not caused by a physical injury. The judge answered in the affirmative, and the jury returned a verdict for the defendants almost immediately thereafter.

The exchange between the jury and the trial judge strongly suggests that the jury might have seriously considered giving the plaintiff damages for emotional distress if the applicable law had been different. Thus, I do not see how it can be said that the trial judge's instruction did not have a prejudicial effect on the jury's verdict. Since that instruction was based on a legal precept that is no longer good law in the District of Columbia, the case should be remanded for a new trial.

### I.

As the majority correctly notes, the sole basis for the appeal in this case is a jury instruction concerning when a plaintiff may recover for emotional injuries. Imogene Williams, the plaintiff-appellant here, alleged minor physical injuries and substantial emotional injuries sustained in an elevator accident. Ms. Williams attributed her psychological trauma not to any physical injury but exclusively to the experience of being trapped in the malfunctioning elevator. The trial judge instructed the jury that, under District of Columbia tort law, a plaintiff may recover for negligent infliction of emotional distress only if the emotional injuries are directly caused by some physical injury suffered by the plaintiff. After deliberating for 90 minutes, the jury sent out its only question to the trial judge: "Do the psychological effects (damages-potential compensation) have to be a result of (related) physical injury?" Joint Appendix ("J.A.") 372–73. The trial judge answered in the affirmative. *Id.* 376. Shortly thereafter, the jury returned a verdict in favor of the defendants on all counts.

After the judgment had been rendered and while the plaintiff's appeal was pending before this court, the District of Columbia Court of Appeals handed down an *en banc* decision changing the governing tort law. *Williams v. Baker*, 572 A.2d 1062 (D.C.1990). In that case, the District of Columbia's highest court "discard[ed] the requirement that, to be compensable, mental or emotional harm must be caused by physical injury." *Id.* at 1073. The court's opinion made two things vividly clear: first, the trial judge's instructions in the instant case were entirely correct at the time they were given; and, second, those instructions would be incorrect if rendered anew today.

Ordinarily, an appellate court's duty under such circumstances is clear. Where governing local law changes while a diversity case is pending on appeal, the appellate court must remand to the district court for a new trial pursuant to the new law. *See Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941). "Intervening and conflicting decisions [of the state courts] will thus cause the reversal of judgments which were correct when entered." *Id.* at 543, 61 S.Ct. at 350.

Although the rule of *Vandenbark* requiring a new trial appears absolute, most courts applying it have undertaken a secondary inquiry to determine whether the state courts would themselves apply their new decisions retroactively to cases pending on appeal. This inquiry is justified on the grounds that a reflexive application of *Vandenbark* could "conflict with the general *Erie* principles [upon which *Vandenbark* is founded] by giving retroactive application to a new state law rule even when the state's highest court would not." *Moorhead v. Mitsubishi Aircraft Int'l, Inc.*, 828 F.2d 278, 289 n. 54 (5th Cir.1987) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

In order to determine whether the District of Columbia Court of Appeals would apply *Williams* retroactively, we look to the local law of retroactivity.[1] In this instance, the proper test is found in *Mendes v. Johnson*, 389 A.2d 781 (D.C.1978) (*en banc*). In *Mendes*, the District of Columbia Court of Appeals stated that "the extent of retroactive application, if any, of an overruling decision should be determined by the courts as a matter of judicial policy, requiring analysis ... on an individualized, case-by-case basis." *Id.* at 788–89. This analysis should turn on four specific criteria:

(1) the extent of the reliance of the parties on the old rule (including the degree of justifiable reliance and the hardship which might result to the litigants as a result of retrospective application); (2) avoidance of altering vested contract or property rights; (3) the desire to reward plaintiffs who seek to initiate just changes in the law; and (4) the fear of burdening the administration of justice by disturbing decisions reached under the overruled precedent.

*Id.* at 789 (footnote omitted). These four factors must be considered against a backdrop of other District of Columbia case law which suggests that intervening judicial decisions should ordinarily be applied to cases pending on direct review "unless equitable considerations require a contrary result." *See Tenants of 2301 E St., N.W. v. District of Columbia Rental Hous. Comm'n*, 580 A.2d 622, 628 (D.C.1990); *cf. In re Creek*, 243 A.2d 49, 51 (D.C.1968) (reviewing presumption favoring retroactive application of federal judicial decisions and noting that "[t]his is the rule which has been followed in our jurisdiction"); *Cosby v. Shoemaker*, 34 A.2d 27, 28–29 (D.C.1943) ("a change in the law between a nisi prius and an appellate decision requires the appellate court to apply the changed law") (quoting *Ziffrin, Inc. v. United States*, 318 U.S. 73, 78, 63 S.Ct. 465, 87 L.Ed. 621 (1943)).[2]

1. Appellee Elcon Enterprises urges that the proper standard for deciding whether a judicial decision will be applied retroactively is set out in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *See* Supplemental Brief for the Appellee Elcon Enterprises, Inc. at 3. But that test is appropriate only where a court decides the retroactive effect of a *federal* judicial decision; it does not govern the application of *state* law in a diversity case. *See Eddings v. Volkswagenwerk, A.G.*, 835 F.2d 1369, 1373 n. 6 (11th Cir.), *cert. denied sub nom. Griffin v. Ford Motor Co.*, 488 U.S. 822, 109 S.Ct. 68, 102 L.Ed.2d 44 (1988); *Samuels v. Doctors Hosp., Inc.*, 588 F.2d 485, 488–89 & n. 8 (5th Cir.1979); *see also American Trucking Ass'ns v. Smith*, ––– U.S. –––, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148 (1990) (plurality opinion) ("The determination whether a constitutional decision of this Court is retroactive ... is a matter of federal law. When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions.").

It must be acknowledged that an earlier panel decision of this court contributed to some confusion on this question. *See Silverman v. Barry*, 845 F.2d 1072, 1085–86 (D.C.Cir.) (applying *Chevron Oil* to determine that a decision by the District of Columbia Superior Court should be given only prospective application), *cert. denied*, 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988). That case, however, did not attempt to reconcile application of the *Chevron Oil* test with the *Vandenbark* decision or with *Erie*. Moreover, the result would have been the same in any event because the District of Columbia court had itself expressly confined its holding to prospective application. *See id.* at 1076.

2. The federal courts, in deciding whether federal judicial decisions should be applied to cases pending on direct review, continue to adhere to a presumption favoring retroactive application. *See, e.g., I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 423 (D.C.Cir.1987).

None of the *Mendes* factors favors limiting the rule announced in *Williams v. Baker* to prospective application. First, there is nothing to suggest that any party here relied in any meaningful way on the pre-existing District of Columbia tort law in shaping its conduct. *Cf. Zweibon v. Mitchell,* 606 F.2d 1172, 1180 (D.C.Cir.1979) (acknowledging the general weakness of public reliance on rules of tort law), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). Second, there is no vested contract or property right at stake. *Cf. Duke Power Co. v. Carolina Envtl. Study Group,* 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978) ("Our cases have clearly established that '[a] person has no property, no vested interest, in any rule of the common law.' ") (quoting *Second Employers' Liab. Cases,* 223 U.S. 1, 50, 32 S.Ct. 169, 175, 56 L.Ed. 327 (1912)). The third factor—the desire to reward plaintiffs who promote innovations in the law—seems most applicable in cases in which a court must decide whether to apply a new rule to the litigants in the very case in which the new rule is announced. *See Mendes,* 389 A.2d at 791 (discussing factor in context of such litigants); *cf. Lamb v. W–Energy, Inc.,* 884 F.2d 1349, 1350 n. 1 (10th Cir.1989) (recognizing "the additional policy consideration of affording the benefits of a change in law to the party whose efforts brought it about"). Finally, the fourth factor—the fear of eliciting a wave of attacks on settled judgments—appears to speak primarily to cases announcing changes in the criminal law, since settled civil cases cannot be collaterally attacked. *See Zweibon,* 606 F.2d at 1176–77. To the extent that it does apply to this case, the number of pending tort cases that might be affected by the change in law is not likely to be so great that the courts would be overburdened by retroactive application.

Because none of the foregoing factors compels prospective application, the underlying presumption favoring retroactive application suggests that the District of Columbia Court of Appeals would apply the rule of *Williams v. Baker* to this case on appeal.

## II.

This brings me to the point of my divergence from the majority's analysis. The majority concludes that even though the trial judge's instructions concerning recovery of damages for psychological injuries were rendered erroneous by an intervening change of law, and even though such an error ordinarily necessitates a new trial, the error in this case was harmless. The damages instruction could not have affected the jury's finding that the appellees were not negligent, the majority reasons, and, without negligence, the issue of recovery of damages was irrelevant to the verdict. By a strictly logical analysis, the majority is, of course, correct. On the facts of this case, however, I cannot share the majority's confidence that the jury proceeded so logically in its deliberations.

From the very outset of this litigation, this case has been about Ms. Williams' claim for damages for the emotional trauma she attributed to an elevator accident. Ms. Williams never claimed any significant physical injury; and it was virtually conceded from the start that her emotional distress was not the result of any physical injury. Thus, common sense would have told any juror that the only meaningful question to be decided was whether Ms. Williams could recover for her emotional distress. Indeed, from what we can glean from the record, this issue is the only one that gave the jury any pause. At the conclusion of its deliberations, the jury asked the trial judge a single, dispositive question: Can we give Ms. Williams the emotional damages she seeks given that her alleged emotional injury was not caused by a physical injury? The judge, correctly at the time, answered no. The jury then promptly held in favor of the defendants. This interaction between the jury and judge strongly suggests that the jury would have seriously considered giving Ms. Williams damages for emotional distress if the applicable law had been different.

If the jury had believed that the defendants were not in any sense "negligent," there would have been no reason to ask the

question about the possibility of damages for emotional injury. Thus, it appears that the jury, upon confirming that it could not in any event award damages for emotional distress that was not a result of physical injury, simply decided that the defendants had "won" and held them not negligent—in effect, working backward from the question of recovery to the question of negligence. I recognize that this inference runs counter to the usual presumption that juries follow their instructions, *see, e.g., Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985), but the circumstances of the jury's deliberations in this case seem to me to refute that presumption. By asking the question it did, at the time when it did, the jury revealed that it considered the question of damages, logically or not, to be centrally relevant to its verdict. This revelation, it seems to me, defies the majority's conclusion that the erroneous instruction was harmless. *See Industrial Dev. Bd. v. Fuqua Indus., Inc.,* 523 F.2d 1226, 1240 (5th Cir.1975) ("Once the jury demonstrates that it is concerned with an issue [by requesting further instructions during deliberations], it cannot be said that a clearly erroneous instruction was nonprejudicial."); *cf. United States v. Gibbs,* 904 F.2d 52, 59 (D.C.Cir.1990) (fact that jury requested further instructions during its deliberations on point later held to be error suggests that error influenced verdict).

We must remand for a new trial unless we are convinced that the erroneous instruction did not affect the jury's verdict. *See Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946); *Jordan v. Medley,* 711 F.2d 211, 218–19 (D.C.Cir.1983); *see also Beckman v. Farmer,* 579 A.2d 618, 648–49 (D.C.1990). *Any significant doubt must be resolved in favor of a new trial. See Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248. Because I "cannot say, with fair assurance, ... that the judgment was not substantially swayed by the error," *id.,* I cannot agree that the erroneous instruction was harmless.

### III.

On the facts of this case, I believe Ms. Williams is entitled to a new trial in light of the intervening change of District of Columbia tort law. Therefore, I dissent.